**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Terry Edward McCall, | ) | C/A No. 2:15-cv-01011-TLW-MGB |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | REPORT & RECOMMENDATION |
| Scotty R Bodiford, James Dorriety, Pat Rae, | ) | |
| Traci Krein, David E McAlhaney, | ) | |
| Sgt. McConnell, Sarah Drawdy, & SC | ) | |
| Highway Patrol Troop @ 3 supervisors, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

The Plaintiff, a state prisoner proceeding *pro se*, filed the instant action on March 2, 2015, pursuant to 42 U.S.C. § 1983. (Dkt. No. 1.) The Plaintiff is currently incarcerated by the South Carolina Department of Corrections at the Ridgeland Correctional Institution. At all times relevant to this action, the Plaintiff was a pretrial detainee at the Greenville County Detention Center ("GCDC"). This matter is before the court on Defendants Bodiford, Dorriety, Rae, and Krein's Motion for Summary Judgment. (Dkt. No. 48) The Plaintiff filed his Opposition Motion for Summary Judgement and Memorandum on February 18, 2016. (Dkt. No. 59.) Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration. For the reasons stated below, this court recommends that the Defendants' Motion for Summary Judgment (Dkt. No. 48) be granted.

## PROCEDURAL HISTORY

The Plaintiff filed an Amended Complaint with leave of the court on October 9, 2015. (Dkt. No. 29.)  The same day, this court issued a Proper Form Order instructing the Plaintiff to complete and return summonses for David E McAlhaney, Sgt. McConnell, Sarah Drawdy, and "SC Highway Patrol Troop @ 3 supervisors." (Dkt. No. 31.) The Proper Form Order required the Plaintiff to comply within 21 days. (*Id.*)  On October 23, 2015, the Plaintiff filed a motion for an extension of time to comply with the Proper Form Order stating he was not allowed to leave his cell until Christmas time. (Dkt. No. 36.)  On October 27, 2015, the court entered a Text Order granting the Plaintiff's motion for an extension of time and allowing the case to be brought into proper form by December 2, 2015. (Dkt. No. 40.)  The Plaintiff submitted summonses for Defendants Pat Rae, Traci Krein and David E McAlhaney on November 2, 2015. The Plaintiff never submitted proposed summonses for Sgt. McConnell, Sarah Drawdy, and "SC Highway Patrol Troop @ 3 supervisors."[1]

On December 14, 2015, Defendants Bodiford, Dorriety, Krein, and Rae filed a Motion for Summary Judgment.  (Dkt. No. 48.) The same day, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), this court issued an order advising the Plaintiff of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion.  (Dkt. No. 61.)  The Plaintiff did not respond to the Motion for Summary Judgment, and this court

---

[1] The court issued a second Proper Form Order directing the Plaintiff to again return Summonses and Forms USM-285's for Defendants Sgt. McConnell and Sarah Drawdy.  (Dkt. No. 49.)  In both of the Proper Form Orders issued by this court, the Plaintiff was warned in bold type that, if he did not bring the case into proper form within 21 days, his case "may be dismissed for failure to prosecute and failure to comply with an order of this Court under Rule 41 of the Federal Rules of Civil Procedure." (*See* Dkt. Nos. 31 & 49.)  Accordingly, as the Plaintiff has not complied with either of these Orders and has failed to prosecute this action, this court recommends Defendants Sgt. McConnell, Sarah Drawdy, and "SC Highway Patrol Troop @ 3 supervisors" be dismissed without prejudice.

issued an Order on January 28, 2016, warning the Plaintiff that if he did not respond by February 17, 2016, his case would be subject to dismissal. (Dkt. No. 28.)

On February 10, 2016, the Plaintiff filed his "EMERGENCY Motion for a Continuance." (Dkt. No. 55.)  The Defendants filed a response in opposition later the same day.  (Dkt. No. 56.) In his motion, the Plaintiff states that he has been in "security lockdown" and, consequently, has been unable to fully litigate his case. (Dkt. No. 55.)  On February 12, 2016, this court issued an Order allowing Plaintiff to reopen discovery for thirty (30) days. (Dkt. No. 57.) On March 17, 2016, this court issued a text order allowing the Plaintiff thirty (30) days from that date to file any additional response to the pending motion for summary judgment. (Dkt. No. 63.)  On March 21, 2016, the Plaintiff filed a motion to compel alleging the Defendants had not fully complied with his discovery requests. (Dkt. No. 66.)  This court reviewed the discovery requests and responses *in camera* and ruled on March 29, 2016 that the Defendants had fully responded to the Plaintiff's requests. (Dkt. No. 74.)  The Plaintiff was then allowed through April 26, 2016 to respond to the Motion for Summary Judgment. (*Id.*) Prior to the court ruling on the motion to compel, on March 28, 2016, the Plaintiff filed a "Supplemental [sic] Complaint." (Dkt. No. 72.) This court ruled in a text order the following day that the Plaintiff had not complied with Rule 15 and that the Plaintiff's attempt to amend his already amended complaint was dilatory as discovery was complete and a motion for summary judgement was pending. (Dkt. No. 75.)

## FACTUAL ALLEGATIONS

### 1. Allegations of the Amended Complaint (Dkt. No. 29.)

The Plaintiff was in an automobile collision on March 4, 2012, and was charged with felony driving under the influence with great bodily injury as a result of the collision. (Dkt. No. 29 at 3.)  The Plaintiff was charged with the offense immediately following the collision while at

Greenville Memorial Hospital by Trooper David McAlhaney of the South Carolina Highway Patrol. (*Id.*) The charging document was Uniform Traffic Ticket ("UTT") # F-540654. (*Id.*) The Plaintiff appeared before a county magistrate and was given a $50,000 bond. (*Id.*) The Plaintiff spent 96 days in jail before he posted bail. (*Id.*) No warrant was ever issued for the Plaintiff, but he was indicted as charged by the Greenville County Grand Jury on an indictment referencing the ticket. (*Id.* at 5.) The Plaintiff contends his arrest and prosecution violated his constitutional rights because he was charged on a UTT instead of a warrant or direct indictment.[2] The Plaintiff alleges he informed Defendants Bodiford and Dorriety[3] concerning his "unlawful detention … many times on several occasions." (*Id.* at 3.) The Plaintiff alleges that he was denied his right to submit grievances. (*Id.* at 8.)

The Plaintiff alleges that he was denied proper medical treatment while at the GCDC for injuries sustained in the automobile collision. (Dkt. No. 29 at 5.) The Plaintiff's injuries resulting from the collision included broken teeth and fractured toes on his left foot. (*Id.*) The Plaintiff had an injury to his shoulder as well. (*Id.* at 7.) The Plaintiff alleges he suffers from "P.T.S.D." as a result of Defendants' lack of medical treatment. (*Id.*) In regards to his teeth, the Plaintiff alleges that he was denied dental care for approximately 45 days. (*Id.* at 6.) He alleges he was denied any special diet and eventually had to pull out his own teeth while in solitary confinement. (*Id.*)

In regards to the injuries to his toes, left foot, and shoulder, the Plaintiff alleges he waited 21 days before he was seen by a nurse practitioner after arriving at GCDC. (Dkt. No. 29 at 5.)

---

[2] The Amended Complaint contains additional detailed allegations relating to the Plaintiff's charge, arrest, bond hearing, detention, and prosecution. The Defendants contained in these allegations have never been served with a complaint, and the facts relevant to the Plaintiff's claims against those Defendants are included here only to the extent necessary to address the motion before the court.

[3] Defendants Scotty R. Bodiford and James Dorriety are GCDC administrators according to the Amended Complaint. (Dkt. No. 29 at 2.)

The Plaintiff alleges that he was not given adequate pain medication, such as a narcotic, and was only allowed ibuprofen and Tylenol by Defendant Traci Krein.[4] (*Id.* at 5-6.) The Plaintiff alleges that his access to ibuprofen and Tylenol was limited to buying it himself from the GCDC canteen and was never allowed more than six regular strength pills in a week. (*Id.*) The Plaintiff alleges that after he was prescribed Lortab, a prescription narcotic painkiller, by a doctor, Defendants Krein and Pamela Rae[5] refused to fill the prescription. (*Id.* at 6.) The Plaintiff alleges that Defendant Krein told him that he would not receive any pain relievers stronger than ibuprofen even though he had a prescription for Lortab. (*Id.*) The Plaintiff alleges that Defendant Krein told him that she had shoulder problems but was able to get through it without narcotics and none would be given to him. (*Id.* at 7.)

The Plaintiff alleges that once he was allowed to see a doctor, Defendant Dorriety attended the appointment because it had taken such a long period of time to have the Plaintiff treated. (*Id.* at 6.) The Plaintiff alleges that Defendants Krein, Rae, Bodiford, and Dorriety would not allow him to receive reconstructive surgery on his foot resulting in permanent disfigurement and loss of full use of the foot. (*Id.* at 7.) The Plaintiff repeatedly reported his medical issues verbally and through the grievance process. (*Id.*)

### 2. Allegations in Defendants' Memorandum in Support of Motion (Dkt. No. 48-1.)

The Defendants allege that, following the Plaintiff's automobile collision and felony DUI charge, he was released from the hospital in law enforcement custody and brought to GCDC. (Dkt. No. 48-36 at 2.) Prior to being released from the hospital, CT scans were taken of his head, neck, and abdomen and x-rays were taken of his left hand and left foot. (*Id.*) The CT scans and x-

---

[4] Defendant Traci Krein is the Health Services Administrator for the GCDC. (Dk.t. No. 48-2 at 2.)
[5] Defendant Pamela Rae is a Physician Assistant employed by Greenville County and assigned to the GCDC. (Dkt. No. 48-3 at 2.)

rays showed no abnormalities. (*Id.* at 5-7.)  Upon discharge, the hospital prescribed the Plaintiff ibuprofen. (*Id.* at 8.)

As to the Plaintiff's left foot and big toe, the Defendants allege the Defendant Rae examined the Plaintiff when he arrived at GCDC the morning of March 5, 2012. (Dkt. No. 48-3 at 2.)  Defendant Rae placed the Plaintiff on a liquid diet for five (5) days followed by a soft food diet for five (5) days. (*Id.* at 3.)  Defendant Rae prescribed tramadol for the Plaintiff to last fourteen (14) days to address the Plaintiff's complaints of pain. (*Id.* at 3, 9.)  Defendant Rae ordered another x-ray of the Plaintiff's left foot, which was taken on March 8, 2012, and showed a previous healed fracture and a fracture to his big toe. (*Id.* at 3, 10.) Defendant Rae consulted with other medical staff members at GCDC and extended the Plaintiff's tramadol prescription for an additional 30 days on March 21, 2012. (*Id.* at 2, 13.)

On March 26, 2012, Defendant Rae ordered the second x-ray of the Plaintiff since his arrival at GCDC.  The x-ray was taken on March 28, 2012. The x-ray showed healing of the Plaintiff's big toe. (Dkt. No. 48-3 at 3, 14-16, 19.)  The Plaintiff was seen by an orthopedist on March 26, 2012. (*Id.* at 17.)  The orthopedist ordered the Plaintiff to wear hard-soled shoes, a prescription for Lortab, a second mattress to be provided to Plaintiff, and that the Plaintiff be re-checked in four (4) weeks. (*Id.* at 17.)  The Plaintiff was again seen by an orthopedist on April 9, 2012. (*Id.* at 18.)  The doctor noted that the Plaintiff's big toe was "well-reduced." (*Id.*)  The doctor ordered that the hard-soled shoes be discontinued and for the Plaintiff to begin working on range of motion exercises. The doctor did not prescribe any further medications. (*Id.*)

On April 19, 2012, the Plaintiff was ordered a new prescription of tramadol and ibuprofen. (Dkt. No. 48-3 at 20.)  On May 14, 2012, the Plaintiff's foot was x-rayed for a third time on the orders of GCDC staff. (*Id.* at 21.)  The physician reading the x-ray found that the

fracture on the Plaintiff's big toe was "healed or healing" and no "acute abnormality" was noted. (*Id.*)

As to the Plaintiff's teeth, the Defendants allege that the Defendant Rae placed the Plaintiff on a liquid diet for five (5) days followed by a soft food diet for five (5) days when he arrived at GCDC on March 5, 2012. (Dkt. No. 48-3 at 2.)   On March 13, 2012, the Plaintiff was placed on the list to be seen by a dentist. (Dkt. No. 48-2 at 3.)  GCDC provides dental care to inmates by contracting with private dentists to hold dental clinic hours at GCDC each month. (*Id.*)  The Plaintiff was examined as scheduled on March 28, 2012. (*Id.* at 3, 6.)  The dentist extracted two (2) of the Plaintiff's teeth that were broken. (*Id.*)  The dentist prescribed ibuprofen for pain and noted that the orthopedist had already prescribed the Plaintiff Lortab. (*Id.* at 6.)  The Plaintiff was seen by a dentist again on April 11, 2012, and the dentist extracted two (2) more of the Plaintiff's teeth that were broken.[6] (*Id.* at 7.) The dentist prescribed ibuprofen. (*Id.*) The Plaintiff was seen by a dentist again on April 18, 2012 and was prescribed antibiotics and ibuprofen. (*Id*. at 8.)  The Plaintiff requested another dental appointment in May of 2012, but refused to attend the appointment. (*Id.* at 48-2 at 9.)  The Plaintiff was released from GCDC on June 9, 2012 on bond. (Dkt. No. 48-2 at 3.)

3.  **Allegations in Plaintiff's Opposition [to] Summary Judgment (Dkt. No. 59.)[7]**

The Plaintiff specifically denies several of the allegations made by Defendants in support of their Motion for Summary Judgment. The Plaintiff denies that he was examined by Defendant

---

[6] The record of these extractions stated that the exam occurred on "4-11-11." (Dkt. No. 48-2 at 7.)  Defendant Krein swore in her affidavit that this occurred on April 11, 2012. (*Id.* at 3.)

[7] The Plaintiff's Opposition Motion for Summary Judgment and Memorandum is signed, but it does not contain a statement declaring the alleged facts true under penalty of perjury or otherwise swearing said facts to be true.  However, in this court's *Roseboro* Order to Plaintiff, this court ordered that "[a]ll affidavits and declarations submitted in this case are submitted under penalties of perjury or subornation of perjury." (Dkt. No. 51.)

Rae on March 5, 2012. (Dkt. No. 59 at 2.) The Plaintiff states that there is no "Examination Status Report" for any examination on March 5, 2012, which would have been created according to GCDC protocol. (*Id.*) The Plaintiff states that his examination on March 20, 2012, evidenced by the corresponding report (Dkt. No. 48-3 at 11), was the first time he was examined at GCDC.[8]

Along with his denial that Defendant Rae examined him on March 5, 2012, the Plaintiff denies that he was given Tramadol or ibuprofen by Defendant Rae on that date.[9] (Dkt. No. 59 at 2-3.) In support of his denial, the Plaintiff cites to the report from his March 20, 2012, examination. (Dkt. No. 48-3 at 11.) The Plaintiff alleges that examination was conducted by "Nurse Johnson" and that Defendant Rae had still not examined him in person as of that date. (Dkt. No. 59 at 3.) The Plaintiff alleges this record shows he was not already on tramadol. At the bottom of the report the writer noted the Plaintiff was being "placed on Ultram [tramadol] to begin 3/21/12 pm." (Dkt. 48-3 at 11.) The Plaintiff argues that this note is further evidence he was not on tramadol prior to March 21, 2012. (Dkt. No. 59 at 3.) The Plaintiff additionally alleges that Defendant Rae did not review the initial x-ray taken March 8, 2012 (Dkt. No. 48-3 at 10), until March 24, 2012. (Dkt. No. 48-3 at 15.) The Plaintiff alleges Defendant Rae made treatment decisions without reviewing the x-ray first. (Dkt. No. 59 at 6.)

The Plaintiff alleges that the tramadol prescribed by Defendant Rae "was <u>not</u> the <u>proper pain reliever</u>." (Dkt. No. 59 at 5.) The Plaintiff alleged that the Lortab prescription that was ordered by the orthopedist was never provided. (*Id.*) To support his allegation, the Plaintiff cites

---

[8] The Plaintiff concedes in a subsequent argument that he was examined by a nurse when he arrived at GCDC on March 4, 2012. (Dkt. No. 59 at 7.) The Plaintiff also later argues that notes that Defendant Rae took during an examination on May 5, 2012, are evidence that she was deliberately indifferent to his serious medical needs. (Dkt. No. 59 at 5.)

[9] This assertion contradicts the grievances the Plaintiff filed during this time period. (Dkt. No. 71-1 at 12.) It contradicts his medical records as well, which indicate he was taking ibuprofen and tramadol. (Dkt. No. 48-2 at 10-12)

the notes from his dental examination on March 28, 2012. (Dkt. No. 48-2 at 6.) This dental examination took place two (2) days after he was ordered to be given Lortab by the orthopedist. (*See* Dkt. No. 48-3 at 10.) A handwritten note at the bottom of the dental report states "not started on Lortab 10 mgs." (Dkt. No. 48-2 at 6.)

The Plaintiff alleges that his inquiries regarding medications he took prior to being incarcerated were treated with deliberate indifference. (Dkt. No. 59 at 5.) In Defendant Rae's notes dated March 5, 2012,[10] Rae stated "Meds written[.] Neuro Watch > 48 hours. Repeated request for info of methadone where, when [sic] 'not important, nevermind['] ¶ [sic]." (Dkt. No. 48-3 at 9.) The Plaintiff alleges that the notation "not important, nevermind" was Defendant Rae's editorial commentary on his request for methadone, which he was previously receiving for "a job related injury." (Dkt. No. 59 at 5.)

The Plaintiff alleges that Defendant Rae was deliberately indifferent by failing to contact outside providers regarding his pain medications. (Dkt. No. 59 at 6.) He further alleges that each of the Defendants are liable because he was never provided any pain medication except ibuprofen despite being prescribed Lortab and tramadol. (Dkt. No. 59 at 6.)

The Plaintiff alleges he was placed on the dental list on March 20, 2012. (Dkt. No. 48-3 at 12.) The Plaintiff alleges that the dates on some of his dental records were changed for "unspecified, unknown reasons," but that he "believes" the dates were changed to "cause and create more pain toward the Plaintiff." (Dkt. No. 59 at 7-8; *see also* 48-2 at 6, 9.) The Plaintiff alleges he had to "suffer over a month due to policy contract with dentist." (Dkt. No. 59 at 7.)

Lastly, the Plaintiff alleges that the records denoting when the Plaintiff was administered different treatments, such as tramadol, Lortab and ibuprofen, are not legible and certain. (Dkt.

---

[10] The court notes that the Plaintiff previously alleged that he was not seen by Defendant Rae on March 5, 2012, and no report existed to memorialize such a meeting.

No. 59 at 9; *see also* 48-2 at 10-18.) The court has reviewed these records and finds that they reflect that the Plaintiff was given ibuprofen throughout the months of March, April, May, and June of 2012; was given Lortab from March 27 through April 9, 2012; and was given tramadol March 6, 2012 through March 26, 2012 and then again in April, May, and June of 2012. (Dkt. No. 48-2 at 10-18.)

## STANDARD OF REVIEW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[A]ll evidence must be construed in the light most favorable to the party opposing summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 261 (1986). "This court is required to construe *pro se* complaints and petitions liberally." *Stout v. Robnett*, 107 F. Supp. 2d 699, 702 (D.S.C. 2000) (internal quotations and citations omitted). " [*P*]*ro se* complaints…are held to a less stringent standard than those drafted by attorneys,…and a federal district court is charged with liberally construing a complaint or petition filed by a *pro se* litigant to allow the development of a potentially meritorious case." *Id.*

## ANALYSIS

The Complaint seeks to bring claims pursuant to 42 U.S.C. § 1983 for "Violation of Fourth U.S. Const. Amendment, Procedural Due Process, Due Process, Medical Treatment." (Dkt. No. 1 at 2.)  In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege (1) that he or she "has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States," and (2) "that the conduct complained of was committed by a person acting under color of state law." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983); *see also Gomez v. Toledo*, 446 U.S. 635, 540 (1983); *Hall v. Quillen*, 631 F.2d 1154, 1155-56 (4th Cir. 1980).  In a § 1983 action, "liability is personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

### 1.  Claims for Release and Injunctive Order

The Plaintiff contends that "the whole process of holding him against his will without a probable cause determination, within the 48 hrs [sic] was a violation of his due process rights and he should be released with all haste." (Dkt. No. 29 at 16.)  The Plaintiff further seeks an "injunctive order making the [GCDC] release detainee's [sic] within 4 hours who are arrested on UTT and held and booked on magistrate charging documents." (*Id.* at 17.)

The Plaintiff's claim that he should be immediately released from custody is barred by law, and Defendants Bodiford, Dorriety, Rae, and Krein are entitled to summary judgment.  As the Supreme Court stated in *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973), when "the relief [a prisoner] seeks is a determination that he is entitled to immediate release or a speedier release from [custody], his sole federal remedy is a writ of habeas corpus."  *See also Heck v. Humphrey*, 512 U.S. 477, 481 (1994) (noting that in *Preiser*, the Court "held that habeas corpus is the

exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and

seeks immediate or speedier release, even though such a claim may come within the literal terms

of § 1983" (citing *Preiser*, 411 U.S. at 488-90)). In *Wilson v. Johnson*, 535 F.3d 262 (4th Cir.

2008), the Fourth Circuit explained as follows:

> In *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), a
> group of state prisoners filed a § 1983 action alleging that the New York State
> Department of Correctional Services' denial of good-time credits violated their
> constitutional right to due process. The prisoners sought an injunction to force the
> prison to restore the credits, a remedy which would have reduced the prisoners'
> sentences. Despite the "literal applicability" of § 1983, the Supreme Court
> affirmed the district court's dismissal of the claim because the prisoners'
> "challenge is just as close to the core of habeas corpus as an attack on the
> prisoner's conviction, for it goes directly to the constitutionality of his physical
> confinement itself and seeks either immediate release from that confinement or
> the shortening of its duration." *Id*. at 489, 93 S.Ct. 1827. Because the plaintiffs
> "sought no [monetary] damages, but only equitable relief-restoration of their
> good-time credits," *Id*. at 494, 93 S.Ct. 1827, the Supreme Court expressly limited
> its holding to the equitable relief sought by the prisoners.

*Wilson*, 535 F.3d at 264.

The Fourth Circuit held in *Wilson* that when a former prisoner is challenging the validity

of his past confinement, and due to his unconditional release "would be left without any access

to federal court if his § 1983 claim was barred[,]" the § 1983 claim could proceed. See *Wilson*,

535 F.3d at 268. In the case at bar, however, Plaintiff remains in custody and is able to access the

federal courts to bring a habeas challenge.[11] In light of the foregoing, the undersigned

recommends that the Defendant's Motion for Summary Judgment be granted as to the Plaintiff's

instant § 1983 claims for release from custody against Defendants Bodiford, Dorriety, Rae, and

Krein. *See Griffin v. Baltimore Police Dep't*, 804 F.3d 692, 694-95 (4th Cir. 2015) ("Habeas

corpus, and not § 1983, is the exclusive federal remedy for state prisoners seeking actual release

---

[11] According to the 13th Judicial Circuit Public Index, the Plaintiff was convicted at trial of
"Felony driving under the influence, great bodily injury results" on May 14, 2015, and sentenced
to 15 years in prison.

from confinement."); *Todd v. Baskerville*, 712 F.2d 70, 73 (4th Cir. 1983) ("[I]f the 'core' of the prisoner's claim is the length or duration of his sentence and any claim of damages is purely ancillary to and dependent on a favorable resolution of the length or duration of his sentence, the proceeding is in habeas."); *see also Proctor v. Spartanburg County Court of Gen. Sessions*, No. 7:12-00836-HMH-KFM, 2012 WL 1440228, at *3 (D.S.C. Apr. 6, 2012), adopted at 2012 WL 1440220 (Apr. 26, 2012) (plaintiff's complaint was subject to summary dismissal where the plaintiff sought "injunctive relief in the form of release from prison and expungement of his record").

The Plaintiff seeks an injunction requiring the release of certain inmates at the GCDC within four hours. (Dkt. No. 29 at 17.)  The Plaintiff is no longer incarcerated at GCDC.  The relief sought by the Plaintiff is moot.  Additionally, the Plaintiff, as a prisoner proceeding *pro se*, may not litigate on behalf of others.  *Oxendine v. Williams*, 509 F.2d 1405, 1407 & n. * (4th Cir.1975) (a *pro se* prisoner cannot be an advocate for others in a class action); *cf. Hummer v. Dalton*, 657 F.2d 621, 625-26 (4th Cir.1981) (a prisoner cannot act as a "knight-errant" for other prisoners).  The undersigned recommends that the Defendants' Motion for Summary Judgment be granted as to the Plaintiff's instant § 1983 claims for an injunction requiring the release of certain inmates from the GCDC within four hours of their arrest.

**2. Claims Against Defendants Scotty Bodiford and James Dorriety**

In viewing the evidence in the light most favorable to the Plaintiff, no genuine issue of material fact exists as to any claims against Defendants Bodiford and Dorriety, and the undersigned recommends the Defendants' Motion for Summary Judgment be granted. Defendants Bodiford and Dorriety are supervisors at GCDC and sparsely mentioned in the Amended Complaint. (Dkt. No. 29.)

Liability in a §1983 action is personal and must arise from each defendant's own constitutional violations. *Trulock*, 275 F.3d 391, 402 (4th Cir. 2001). The doctrines of vicarious liability and respondeat superior are generally not applicable in § 1983 actions. *Vinnedge v. Gibbs*, 550 F.2d 926, 927-29 (4th Cir. 1977); *see also Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978) (holding "that a municipality cannot be held liable *solely* because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"). However, the Fourth Circuit has held that

> a supervisor can be liable where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury"; (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between his inaction and the constitutional injury."

*King v. Rubenstein*, No. 15-6382 at *33 (4th Cir. June 7, 2016) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). A plaintiff in a supervisory liability case "assumes a heavy burden of proof," as the plaintiff "not only must demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices." *Id.* at 373 (internal quotation marks and citations omitted). Generally speaking, a plaintiff cannot satisfy this heavy burden of proof "by pointing to a single incident or isolated incidents," but "[a] supervisor's continued inaction in the face of documented widespread abuses . . . provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates." *Id.* (citations omitted); *see also Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987) ("[A] warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement.").

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each

Government-official defendant, through the official's own actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

To the extent the Plaintiff alleges that Defendants Bodiford and Dorriety are liable under a theory of *respondeat superior*, the claims are barred by law.  To the extent the Plaintiff alleges that Defendants Bodiford and Dorriety are liable in their supervisory capacity, there is no evidence in the record that Defendant's Bodiford and Dorriety knew of any subordinate[12] being "engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" that any response they made showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" or that there was an "affirmative causal link" between any inaction and the constitutional injury. *King*, No. 15-6382 at *33 (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). To the contrary, the Plaintiff alleges that Defendant Dorriety attended a doctor's appointment with him to ensure the Plaintiff received timely medical care. (Dkt. No. 29 at 6.)

The Plaintiff alleges that Defendants Bodiford and Dorriety, along with Rae and Krein, refused to allow Plaintiff to receive reconstructive surgery on his left foot and big toe resulting in "ongoing pain, numbness… with lack of circulation, inability to wear normal shoes,…[and the inability] to stand more than 10 minutes and walk normal[ly]." (Dkt. No. 29 at 7.)  Outside of this allegation in the Amended Complaint, there is no evidence in the record that the Plaintiff required reconstructive surgery.  There is no evidence that any medical professional recommended such a procedure.  To the contrary, the final x-ray taken of the Plaintiff showed that Plaintiff's big toe was "healed or healing" and no "acute abnormality" was noted in the foot or toe. (Dkt. No. 48-3 at 21.)  Additionally, there is no evidence in the record that Defendants

---

[12] Defendants Rae and Krein are the only defendants that the record shows worked at GCDC.

Bodiford or Dorriety ever personally made any decisions regarding the Plaintiff's medical treatment.[13]

The Plaintiff alleges that Defendants Bodiford and Dorriety "knew or should or known" that he was being unlawfully detained, and he submitted multiple grievances informing them that his arrest and detention were unlawful. (Dkt. No. 29 at 3, 14.)  Claims of false arrest and false imprisonment "are essentially claims alleging a seizure of the person in violation of the Fourth Amendment." *Rogers v. Pendleton*, 249 F.3d 279, 294 (4th Cir.2001). Claims for false arrest and false imprisonment both require the lack of probable cause to arrest. *Jackson v. City of Abbeville*, 366 S.C. 662,665, 623 S.E.2d 656, 658 (S.C.App.2005). "The Fourth Amendment is not violated by an arrest based on probable cause." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Plaintiff acknowledges he was indicted by a South Carolina grand jury.[14] (Dkt. No. 29 at 5.) A grand jury indictment is sufficient evidence of probable cause, which defeats Plaintiff's claims for false arrest and false imprisonment based on lack of probable cause. *See Ex parte United States*, 287 U.S. 241, 250, (1932) ("It reasonably cannot be doubted that, in the court to which the indictment is returned, the finding of an indictment, fair upon its face, by a properly

---

[13]  Even if Defendants Bodiford and Dorriety did make decisions regarding the Plaintiff's treatments, "[p]rison officials implement the type and amount of medical treatment at their discretion." *Missouri v. Spivey*, No. 4:I3-CV-OI326-RMG, 2014 WL 4349151, at *9 (D.S.C. Aug. 29, 2014) (citing *Allah v. Hayman,* 442 F. App'x 632, 635 (3d Cir.2011) (holding that deliberate indifference standard "requires much more" than taking issue with the "amount and kind of medical care" an inmate received); *Johnson v. Doughty,* 433 F.3d 1001 (7th Cir.2006) (finding that a prison doctor who prescribed non-surgical means of treating an inmate's hernia was not deliberately indifferent to the inmate's medical needs where the doctor formed a professional opinion, other doctors agreed, and the inmate continued to have associated abdominal pain); *Faison v. Rosado,* 129 F. App'x 490, 492 (11th Cir.2005) (noting that although a prisoner "might not agree with the method of treatment provided, matters of medical judgment do not give rise to a § 1983 claim")).

[14] The Plaintiff alleges his grand jury proceedings were "prejudiced," but there is no evidence in the record outside of the Plaintiff's use of "buzzwords" that there was anything insufficient with his indictment. (Dkt. No. 29 at 5.)

constituted grand jury, conclusively determines the existence of probable cause for the purpose

of holding the accused to answer."); *United States v. Soriano–Jarquin*, 492 F.3d 495, 502 (4th

Cir.2007) (noting probable cause may be satisfied by a grand jury indictment); *White v.

Coleman*, 277 F.Supp. 292, 297 (D.S.C.1967) ("[W]here the grand jury have returned a true bill

upon the charge made, such finding amounts to a judicial recognition that probable cause does

exist ... and infers *prima facie* probable cause for the prosecution." (citation omitted)).  This

court finds that no genuine issue of fact exists as to whether Defendants Bodiford and Dorriety

violated the Plaintiff's constitutional rights, and this court recommends that Defendants Bodiford

and Dorriety are entitled to summary judgment as a matter of law.

**3.   Claims For Deliberate Indifference to a Serious Medical Need**

The Plaintiff alleges that Defendants Rae and Krein were deliberately indifferent to his

serious medical needs.  As a pretrial detainee,[15] the protections given by the Due Process Clause

of the Fourteenth Amendment, not the Eighth Amendment, apply to the Plaintiff's case. *Slade v.

Hampton Roads Reg'l Jail*, 407 F.3d 243, 250 (4th Cir. 2005). Deliberate indifference towards a

pretrial detainee's serious medical need violates the Due Process clause of the Fourteenth

Amendment. *Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001); *Grayson v.

Peed*, 195 F.3d 692, 695 (4th Cir.1999) (applying deliberate indifference standard to pretrial

detainee's claim that he was denied needed medical treatment), *cert. denied*, 529 U.S. 1067

(2000).  "The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment

right of convicted prisoners, requires that government officials not be deliberately indifferent to

any serious medical needs of the detainee."  *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990)

(citations omitted).

---

[15] At the times relevant to the Amended Complaint, the Plaintiff was a pretrial detainee.

The Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," in the case of *Estelle v. Gamble*, 429 U.S. 97, 97 (1976). The court stated:

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," *Gregg v. Georgia,* 428 U.S. 153, 182-83 (1976), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 103–105. (Footnotes omitted).

"The test for deliberate indifference has two parts. First, whether the deprivation of medical care was sufficiently serious (objective component) and second, whether there existed a culpable state of mind (subjective component)." *Harden v. Green*, 27 F. App'x 173, 176 (4th Cir. 2001) (citing *Wilson*, 501 U.S. at 298). To satisfy first part of the test, a plaintiff must show that the injury was objectively serious. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (internal citation omitted).

To satisfy the subjective component, a plaintiff must show that a defendant knew of and disregarded the risk posed by the serious medical need. *Farmer*, 511 U.S. at 837. Two components must be shown to satisfy a defendant had a culpable state of mind. First, actual knowledge of the risk of harm to the inmate is required. *Iko*, 535 F.3d at 241 (citing *Young v. City of Mt. Ranier*, 238 F.3d 567, 575–76 (4th Cir.2001)) (emphasis in original); *see also Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir.2004) ("It is not enough that the officers should have recognized [a substantial risk of harm]."). Second, a defendant "must *also* have

'recognized that *his actions were insufficient'* to mitigate the risk of harm to the inmate arising

from his medical needs." *Iko*, 535 F.3d at 241 (citing *Parrish*, 372 F.3d at 303) (emphasis in

original).

"Negligen[ce] in diagnosing or treating a medical condition" is not actionable under §

1983. *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Deliberate indifference to a

serious medical need "describes a state of mind more blameworthy than negligence." *Farmer*,

511 U.S. at 835.  The fact that a plaintiff's medical complaint remains after treatment does not

show deliberate difference as the Constitution does not mandate a cure. *Hooks v. Delany*, No.

2:12-CV-305-MGL-BHH, 2013 WL 353275, at *7 (D.S.C. Jan. 7, 2013) *report and*

*recommendation adopted*, No. 2:12-CV-0305-PMD, 2013 WL 353559 (D.S.C. Jan. 29, 2013)

(citing *Armour v. Herman,* No. 1:05–CV–295–TLS, 2005 WL 2977761, at *3 (N.D.Ind. Nov.4,

2005) (holding "[t]he Eighth Amendment does not require medical success....").

### a.  Injuries to Toe and Foot

No genuine issue of material fact exists as to the Plaintiff's claims regarding the

treatment of his big toe and left foot, and the Defendants are entitled to summary judgment as a

matter of law. There is no evidence that any of the Defendants were deliberately indifferent to

the Plaintiff's injuries to his big toe or foot.  The record shows that the Plaintiff was being

diligently treated for his injuries and pain throughout his stay at GCDC.   The Plaintiff was

released from the hospital on March 4, 2012, and taken in custody to GCDC. (Dkt. No. 48-36 at

2.)  Prior to being released from the hospital, CT scans were taken of his head, neck, and

abdomen and x-rays were taken of his left hand and left foot. (*Id.*) The CT scans and x-rays

showed no abnormalities. (*Id.* at 5-7.)  Upon discharge, the hospital prescribed the Plaintiff

ibuprofen. (*Id.* at 8.)

The Plaintiff was given a medical assessment by a nurse upon arrival. (Dkt. No. 59 at 7.) The Plaintiff disputes that he was then seen by Defendant Rae on March 5, 2012. (Dkt. No. 59 at 2.) Regardless of whether he was seen by Defendant Rae on March 5, the Plaintiff began a tramadol prescription in addition to ibuprofen beginning on that date. (Dkt. No. 48-2 at 10-14.) On March 8, 2012, the Plaintiff's toe and foot were x-rayed and the x-rays were read by Matthew Carson M.D. (Dkt. No. 48-3 at 10.) Defendant Rae consulted with other medical staff members at GCDC and extended the Plaintiff's tramadol prescription for an additional 30 days on March 21, 2012. (*Id.* at 2, 13.)

Defendant Rae ordered the second x-ray since he arrived at GCDC on March 26, 2012, which was taken on March 28, 2012, and showed healing of the Plaintiff's big toe. (Dkt. No. 48-3 at 3, 14-16, 19.)  The Plaintiff was seen by an orthopedist on March 26, 2012. (*Id.* at 17.)  The orthopedist ordered the Plaintiff to wear hard-soled shoes, a prescription for Lortab, a second mattress to be provided to Plaintiff, and that the Plaintiff be re-checked in four (4) weeks. (*Id.* at 17.)  The Plaintiff was again seen by an orthopedist on April 9, 2012. (*Id.* at 18.)  The doctor noted that the Plaintiff's big toe was "well-reduced." (*Id.*)  The doctor ordered that the hard-soled shoes may be discontinued and for the Plaintiff to begin working on range of motion exercises. The doctor did not prescribe any further medications. (*Id.*) On April 19, 2012, the Plaintiff was ordered a new prescription of tramadol and ibuprofen. (Dkt. No. 48-3 at 20.)  The Plaintiff's foot was x-rayed for a third time on May 14, 2012. (*Id.* at 21.)  The orthopedist found that the fracture on the Plaintiff's big toe was "healed or healing" and no "acute abnormality" was noted. (*Id.*)

This court finds that the record does not contain any evidence the Defendants deprived the Plaintiff of any medical care or medications for his left foot and toe.  The Plaintiff has failed to meet the objective requirement of the test for deliberate indifference.  Additionally, there is no

evidence in the record that Defendant Rae or Krein knew of any medical need that they were not diligently treating.[16] The record consistently shows that none of the Plaintiff's medical needs were left unattended. This court recommends that the Defendants' Motion for Summary Judgment be granted.

### b. Dental Care

No genuine issue of material fact exists as to the Plaintiff's claims regarding his dental care, and the Defendants are entitled to summary judgment as a matter of law. As with his left foot and toe, the record demonstrates that the Plaintiff was provided with adequate dental care while at GCDC. The Plaintiff alleges he was denied dental care for "approximately 45 days with severe cruciating [sic] pain." (Dkt. No. 29 at 6.) The Plaintiff alleges that he had to pull two of his own teeth out while in solitary confinement. (*Id.*)

The record reflects that the Plaintiff first was examined by a dentist on March 28, 2012, 23 days after he arrived at GCDC. (Dkt. No. 48-2 at 3, 6.) At that time, the dentist extracted two (2) of the Plaintiff's broken teeth and prescribed ibuprofen for pain. (*Id.* at 6.) The Plaintiff was seen by a dentist again on April 11, 2012, and the dentist extracted two (2) more of the Plaintiff's teeth that were broken.[17] (*Id.* at 7.) The dentist prescribed ibuprofen. (*Id.*) The Plaintiff was seen by a dentist a third time since arriving at GCDC on April 18, 2012, and was prescribed antibiotics and ibuprofen. (*Id.* at 8.) The Plaintiff requested another dental appointment in May

---

[16] The Plaintiff contends that quotations written on Defendant's Rae's notes from March 5, 2012 are evidence of her ill will towards him. (Dkt. No. 59 at 6.) The court again notes that the Plaintiff denies the Defendant Rae ever saw him on this date. (*Id.* at 2.) The Plaintiff does not explain how Defendant Rae never saw him yet made notes on examining him and their conversations. The quotations cited by the Plaintiff appear to be quoting the Plaintiff himself. (Dkt. No. 48-3 at 5.) The record states that the Plaintiff "repeated request for info of methadone where when 'not important, nevermind.'" (*Id.*)

[17] The record of these extractions states that the exam occurred on "4-11-11." (Dkt. No. 48-2 at 7.) This is an apparent typo because there is no evidence he was at GCDC at that time. Defendant Krein swore in her affidavit that the extractions occurred on April 11, 2012. (*Id.* at 3.)

of 2012, but refused to attend the appointment. (*Id.* at 48-2 at 9.)   The record reflects that the Plaintiff was given ibuprofen, tramadol, and Lortab throughout his time at GCDC as discussed *infra*.

"[O]fficials evince deliberate indifference by acting intentionally to delay or deny the prisoner access to adequate medical care or by ignoring an inmate's known serious medical needs."  *Sharpe v. S. Carolina Dep't of Corr.*, 621 F. App'x 732, 733-34 (4th Cir. 2015) (citing *Estelle,* 429 U.S. at 104–05; *Young,* 238 F.3d at 576). "A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Id.*  at 734 (quoting *McGowan v. Hulick,* 612 F.3d 636, 640 (7th Cir.2010) (vacating and remanding summary dismissal of complaint alleging three-month delay in dental treatment)). "This court is governed by the principle that the objective is to provide the minimum level of dental care required by the Constitution."  *McCauley v. Johnson*, No. 7:07-CV-00244, 2007 WL 2713067, at *4 (W.D. Va. Sept. 17, 2007) (citations an internal quotations omitted) (holding that a 5 day delay to be examined by a dentist followed by a several week delay in having teeth extracted did not give rise to a constitutional claim.).

The evidence in the record shows that Defendants Rae and Krein were not deliberately indifferent to the Plaintiff's serious medical needs in regards to his dental claims.  While the Plaintiff's allegation that he pulled his own teeth is concerning, there is no evidence that his actions were caused by the deliberate indifference of the Defendants.  The Plaintiff never waited longer than 23 days to see a dentist or have his broken teeth extracted. He was regularly treated by dentists while at GCDC.  The Plaintiff was given pain medications to help with the pain his teeth caused before and after he saw the dentist.  There is no evidence in the record that the

Defendants acted to deliberately delay any treatment or cause the Plaintiff pain.  This court recommends the Defendants' Motion for Summary Judgment be granted.

### c.  Pain Medications

No genuine issue of material fact exists as to the Plaintiff's claims regarding his pain medications, and the Defendants are entitled to summary judgment as a matter of law. The Plaintiff contends that he was not given adequate pain medication and at times was denied the pain medication he was prescribed.  There is no evidence in the record to support his allegations to give rise to a constitutional claim.

"[M]ere disagreement between an inmate and medical staff regarding the proper course of treatment provides no basis for relief." *Sharpe*, 621 F. App'x at 733-34 (citing *Russell v. Sheffer,* 528 F.2d 318, 319 (4th Cir.1975)). Many courts have recognized that an inmate's disagreement with the type and strength of pain medication he is prescribed does not amount to deliberate indifference.  *See, e.g., Weigher v. Prison Health Servs.,* 403 F. App'x 668, 670 (3d Cir.2010) ("[Absent] evidence that [doctor] purposefully prescribed ineffective [pain] medication ... the claim more closely resembles one of negligence as opposed to deliberate indifference."); *Starling v. United States,* 664 F.Supp.2d 558, 570–71 (D.S.C.2009) (concluding that allegations of "ignoring specialist's recommendations, dispensing inferior pain medication, and refusing prescribed treatment" on part of doctor did not establish deliberate indifference); *Jacobs v. McVea,* No. 14-CV-552, 2014 WL 2894286, at *7 (E.D. La. June 25, 2014) (unpublished) ("While it is evident that plaintiff was unhappy with the over-the-counter pain medication, a prisoner has no right to be prescribed a particular medication for pain, and the fact that he disagrees with the prison medical staff concerning which pain medication is appropriate is not actionable under § 1983."); *Feder v. Sposato,* No. 11-CV-193, 2014 WL 1801137, at *9

(E.D.N.Y. May 7, 2014) (unpublished) ("[T]he failure to provide stronger pain medication does not constitute deliberate indifference."); *Parker v. Burris*, No. 1:13-CV-488, 2015 WL 1474909, at *7 (M.D.N.C. Mar. 31, 2015), *report and recommendation adopted*, No. 1:13-CV-488, 2015 WL 2169148 (M.D.N.C. May 8, 2015), *aff'd*, 623 F. App'x 82 (4th Cir. 2015), *cert. denied*, 136 S. Ct. 1716 (2016) ("the failure of prison medical personnel to provide pain medication of sufficient strength does not constitute deliberate indifference.").

The Plaintiff's medical records[18] show that he was given tramadol and ibuprofen starting on March 5, 2012. (Dkt. No. 48-2 at 10-12.) Both of these medications continued until March 27, 2012, when the Plaintiff began taking Lortab three times per day. (*Id.*) The Lortab ceased on April 9, 2012. (*Id.* at 14-15.) The Plaintiff was given Lortab and ibuprofen from April 5-9, 2012. (*Id.*) The Plaintiff was then given ibuprofen intermittently until his tramadol resumed on April 20, 2012. (*Id.*) The Plaintiff was given tramadol and ibuprofen multiple times per day until he left GCDC on June 9, 2012. (*Id.* at 14-18.) These records match the affidavits of Defendants Krein and Rae. (Dkt. Nos. 48-2 at 2-3, 48-3 at 2-4.)

The Plaintiff's allegations that he was not given tramadol beginning March 5, 2012, and that his Lortab prescription was never filled are directly contradicted by his own statements contained in grievances he filed while at GCDC.[19] The Plaintiff filed a grievance on March 20, 2012 that he wrote pertained to March 5-17, 2012. (Dkt. No. 71-1 at 12.) In the grievance, he wrote, "I could use 2 Ultram [tramadol] 3 times a day for [sic] the least, But the (1) pill at night is rest helping [sic]." (*Id.*) On March 24, 2012, the Plaintiff filed a grievance that stated he was "given (1) Ultram [tramadol] in the morning [sic] (1) Ultram at night." (Dkt. No. 71-1 at 17.) On

---

[18] The Plaintiff contends that these records are not legible. (Dkt. No. 59 at 8-9.) The court did not have any difficulty reading the records.

[19] Many of his grievances contain threats to file this very § 1983 lawsuit. (*See* Dkt. No. 71-1.)

March 27, 2012, the Plaintiff filed a grievance that was received the following day. (Dkt. No. 71-1 at 19.)  The Plaintiff wrote, "I am not receiving the Motrin (ibu) medicine or Ultram [tramadol] prescribed by (Dr. Rae on 3-26-12) only receiving Lortab from Dr. Watson…." (*Id.*)  In response, the staff noted that the Plaintiff was evaluated by the orthopedist on March 26, 2016, and was given "new/updated orders." (*Id.*)  The Plaintiff submitted another grievance on March 27, 2012, stating that he needed Lortab "(4) times a day not (3) times a day." (Dkt. No. 71-1 at 21.) (emphasis in original). On March 29, 2012, the Plaintiff filed another grievance. (Dkt. No. 71-1 at 26-27.)  In the grievance, the Plaintiff stated that he was given his Lortab prescription because the tramadol was not enough. (*Id.*) The Plaintiff stated that GCDC was committing a "crime" by not giving him tramadol in addition to Lortab. (*Id.*)  According to the Plaintiff, "once a medication is prescribed and filled, it cannot be stopped by no-one." (*Id.*)  On April 1, 2012, the Plaintiff filed a grievance requesting tramadol to "support the Lortab." (Dkt. No. 71-1 at 30.)  On April 10, 2012, the Plaintiff filed a grievance stating that his Lortab had stopped and that "it has not been a month yet."[20] (Dkt. No. 71-1 at 43.)

The record reflects that the Plaintiff was regularly seen by an orthopedist, a dentist, Defendant Rae, and other medical personnel at the jail to treat the Plaintiff for his injuries and accompanying pain.  The Plaintiff's contention that the Defendants were deliberately indifferent to his pain is not supported by the record.  Therefore, as to the Plaintiff's claims regarding his pain medications, this court recommends the Defendants' Motion for Summary Judgment be granted.

### 4.  State Law Claims for Medical Malpractice

---

[20] The court notes that the Plaintiff's statement that the Lortab ended on April 9, 2012, is wholly consistent with his medical record (Dkt. No. 48-2 at 14-15).

To the extent the Plaintiff is attempting to bring claims under state law, the Defendants are entitled to judgment as a matter of law. Where a plaintiff brings claims arising from alleged negligent medical treatment, the claims are for medical malpractice. *Millmine v. Harris*, No. 3:10-1595-CMC, 2011 WL 317643, at *1 (D.S.C. Jan. 31, 2011). "The burden of proof of negligence, proximate cause, and injury in a medical malpractice case is on the plaintiff throughout." *Dumont v. United States*, 80 F. Supp. 2d 576, 581 (D.S.C. 2000). A plaintiff must comply with the applicable substantive state law governing medical malpractice claims when proceeding in federal court. *Id.* South Carolina Code Section 15-79-125 requires, in part, that "[p]rior to filing or initiating a civil action alleging injury or death as a result of medical malpractice, the plaintiff shall contemporaneously file a Notice of Intent to File Suit and an affidavit of an expert witness." In South Carolina, a Plaintiff alleging a medical malpractice claim must prove the following at trial by a preponderance of the evidence:

(a) the recognized and generally accepted standards, practices, and procedure in the community which would be exercised by competent physicians in the same specialty under the same circumstances;

(b) that the physician or medical personnel negligently deviated from the generally accepted standards, practices, and procedures;

(c) that such negligent deviation from the generally accepted standards, practices, and procedures was a proximate cause of the plaintiff's injury; and

(d) that the plaintiff was injured.

*Argot v. Harden*, No. 4:11-CV-2755-MBS-TER, 2013 WL 625528, at *7 (D.S.C. Jan. 10, 2013), *report and recommendation adopted*, No. 4:11-CV-2755-RMG, 2013 WL 625489 (D.S.C. Feb. 20, 2013) (citation omitted). The Plaintiff must establish by expert testimony the standard of care and the alleged breach unless the standard and breach are common knowledge. *Id.* (citing *Martasin v. Hilton Head Health Sys. L.P.*, 364 S.C. 430, 613 S.E.2d 795, 799 (2005)).

The Plaintiff in the case at bar has not complied with S.C. Code § 15-79-125 nor is there any evidence in the record to establish the elements of a medical malpractice claim. The Plaintiff did not include "a Notice of Intent to File Suit and an affidavit of an expert witness" as required by S.C. Code § 15-79-125. The Plaintiff has not alleged or provided any expert opinion as to what the standard of care was, how Defendants Bodiford, Dorriety, Rae, and Krein breached the standard of care, or how Defendants Bodiford, Dorriety, Rae, and Krein were the proximate cause of any injury.[21] The Plaintiff has not alleged sufficient facts to comply with South Carolina law to move forward with a medical malpractice claim. This court recommends Defendants' Motion for Summary Judgment be granted.

## CONCLUSION

In viewing the facts in the light most favorable to the Plaintiff, the court finds there is no genuine issue of material fact as to whether the Plaintiff "has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States," and this court recommends that the Defendants are entitled to summary judgment as a matter of law. *Dowe*, 145 F.3d at 658. Wherefore, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment (Dkt. No. 48) be **GRANTED**.

IT IS SO RECOMMENDED.

June 15, 2016

Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

---

[21] All of the Plaintiff's relevant injuries were caused by the automobile collision that resulted in his conviction for felony driving under the influence. The Plaintiff does not allege any new injuries as a result of his medical care.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).